JS - 6

"O"

# UNITED  STATES  DISTRICT  COURT

## FOR  THE  CENTRAL  DISTRICT  OF  CALIFORNIA

| | |
|---|---|
| TROY GRANTZ, | CASE NO. SACV 08-0855 AG (ANx) |
| Plaintiff, | |
| v. | ORDER GRANTING MOTION FOR SUMMARY JUDGMENT |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, and DOES 1 through 100, inclusive, | |
| Defendants. | |

Defendant State Farm Mutual Automobile Insurance Company ("Defendant" or "State Farm") has filed a motion for summary judgment ("Motion").  After considering all papers and arguments submitted, the Court GRANTS the Motion.

## BACKGROUND

This is a disability discrimination action brought by Plaintiff Troy Grantz  ("Plaintiff") against his former employer, State Farm.  The relevant facts extend over a long time period, and the summary that follows is not intended to include all of the relevant facts.  State Farm is a mutual insurance company that sells, among other things, automobile insurance.  (Ferrara Decl. ¶

3.)  In 1992, Plaintiff began working for State Farm as a claim representative.  (Grantz Decl. ¶ 2; Dunn Decl. ¶¶ 7, 9.)  Claim representatives are responsible for processing claims submitted by State Farm policyholders.  (Ferrara Decl. ¶ 8.)  For example, if a policyholder is involved in a car accident, a claim representative would speak with the policyholder about the claim, take statements from the policyholder and other witnesses, coordinate the process of getting an estimate for the cost of repairs, and coordinate repairs and payment.  (Ferrara Decl. ¶ 8.)

Before 1999, State Farm's claim representatives in California generally worked "in the field."  Representatives were usually assigned their own specific claims to process from start to finish, and would often travel outside of State Farm's offices to view damaged vehicles, visit accident sites, or meet with representatives at repair shops.  (Ferrara Decl. ¶ 9.)  In 1999, State Farm established an Auto Claims Central ("ACC") operation in California.  Representatives working at the ACC worked primarily in a call-center environment, processing claims by telephone and keeping notes in a computer database.  (Ferrara Decl. ¶ 10.)  Instead of being assigned specific claims to process from start to finish, representatives in the ACC shared responsibility for processing claims.  (Ferrara Decl. ¶ 11.)

In 1992, the same year Plaintiff began working for State Farm, he was diagnosed with ulcerative colitis and irritable bowel disease.  (Grantz Decl. ¶ 2.)  When treatment failed, Plaintiff was forced to undergo a total colostomy, where the entire colon was removed, and a colostomy bag was attached.  Following this surgery, Plaintiff continued to experience complications, including "pouchitis" and "post-op adhesions."  (Grantz Decl. ¶ 2.)  Plaintiff underwent further surgeries and treatment for the colitis, as well as testicular surgery.  (Grantz Decl. ¶ 2.)  Plaintiff states that he has undergone over 13 surgeries, has been admitted to the hospital over 100 times, and still endures chronic pain.  (Grantz Decl. ¶ 2.)  In part because of these physical ailments, Plaintiff asserts, he suffers from depression and has at times suffered from anxiety.  (Grantz Decl. ¶ 2.)

Until 1999, Plaintiff worked "in the field" as a claim representative for State Farm.  Plaintiff was then transferred to the ACC, and worked there as a claim representative from 1999 until 2003.  (Grantz Dep. Vol. 1, 53:11-13; 63:2-4.)  Plaintiff asserts that work in the ACC was

stressful.  Representatives in the ACC were expected to answer a high volume of phone calls, and Plaintiff asserts that their productivity was tracked.  (Grantz Decl. ¶¶ 5-7.)  Plaintiff states that the stress eventually led him to suffer anxiety and panic attacks.  (Grantz Decl. ¶ 8.)  After calling State Farm's employee assistance line, Plaintiff was referred to Dr. Phillip Cohen, a psychiatrist.  (Grantz Decl. ¶ 8.)  Cohen prescribed anti-anxiety and anti-depression medication.  Those medications helped for a time, but Plaintiff's symptoms eventually returned and began to escalate.  (Grantz Decl. ¶ 8.)  In March 2001, Plaintiff asserts that the anxiety and depression became so severe that he suffered a "breakdown" and was voluntarily hospitalized for three days in a hospital psychiatric unit.  (Grantz Decl. ¶ 8.)  After leaving the facility, Plaintiff continued to consult Cohen and began seeing a psychologist.  (Grantz Decl. ¶ 8.)  Plaintiff continued to suffer stress and anxiety caused by his job duties at the ACC.  (Grantz Decl. ¶ 8.)

In March 2003, Plaintiff's application for a transfer to a field position in Irvine as a claims representative was granted.  (Grantz Decl. ¶ 9.)  Plaintiff asserts that the field position was much less stressful, and after his transfer, his panic and anxiety attacks subsided and eventually stopped.  (Grantz Decl. ¶ 12.)  Soon after the transfer, Plaintiff asserts, he was able to stop taking his anti-anxiety medication.  (Grantz Decl. ¶ 12.)

In late 2006, State Farm determined that backlogs were developing in its ACC operation.  To address the problem, State Farm created a "bridge team" to address the backlogs in spring 2007.  (Ferrara Decl. ¶ 14.)  The team, consisting of field representatives, would work in the ACC temporarily to "bridge" the staffing needs of the ACC in clearing the backlogs.  (Ferrara Decl. ¶ 14.)

In February 2007, Plaintiff had a problem with his colostomy bag that required months of treatment, and on February 8, 2007, Plaintiff began a paid leave of absence.  (Grantz Decl. ¶ 13; Dunn Decl. ¶ 13.)  In early April 2007, Plaintiff was still on medical leave when he received a call from his supervisor, Bill Riggs ("Riggs").  Riggs advised Plaintiff that he would be transferred to the bridge team.  (Grantz Decl. ¶ 13.)  Riggs asserts that Plaintiff was chosen for the bridge team assignment because of his prior experience in the ACC, as well as his organization and communication skills.  (Riggs Dep. 12:10-13:23, Riggs Decl. ¶ 11.)  To Riggs'

1    knowledge, none of the other field representatives in Plaintiff's office had experience working in

2    the ACC.  (Riggs Decl. ¶ 11.)

3          In May 2007, State Farm's Employee Health Services ("EHS") department suggested to

4    Plaintiff that he might be able to work from home while waiting for the issue with his colostomy

5    bag to resolve.  (Grantz Dep. Vol. 1, 174:12-175:19.)  Plaintiff agreed, and State Farm made

6    arrangements for him to do so, providing a cell phone and laptop computer.  (Ferrara Decl. ¶¶

7    23, 24; Grantz Dep. Vol. 1, 176:11-177:12; Maxey Dep. 27:12-28:4.)  State Farm asserts that

8    when it suggested to Plaintiff that he could work from home, State Farm management believed

9    that Plaintiff would be healed and ready to report to work after only a short time.  (Ferrara Decl.

10   ¶¶ 22, 23, 26; Miller Decl. ¶ 9, Ex. A.)  Management then learned, State Farm asserts, that

11   Plaintiff would not be able to return to work as quickly as they had expected.  (Ferrara Decl. ¶

12   26; Miller Decl. ¶ 9, Ex. A.)  Plaintiff's work-from-home assignment was then discontinued, and

13   Plaintiff was placed back on paid sick leave.  (Ferrara Dep. Exs. 33, 34; Dunn Dep. Ex. 4.)  State

14   Farm asserts that Plaintiff's work-from-home assignment was discontinued because of "potential

15   wage and hour and safety concerns."  (Ferrara Decl. ¶ 27; Dunn Decl. ¶ 13.)

16         In August 2007, State Farm management decided that the bridge team members would be

17   permanently assigned to the ACC, instead of temporarily assigned there to clear backlogs, as

18   originally planned.  (Ferrara Decl. ¶ 28.)  In late August or early September 2007, Plaintiff

19   informed human resources representative John Dunn ("Dunn") that he did not want to work at

20   the ACC, as he found the ACC environment too stressful and preferred working in the field.

21   (Dunn Dep. 52:2-53:3.)  State Farm asserts that Plaintiff was not alone in objecting to the

22   transition.  Of the eight representatives in Irvine selected for the Bridge Team and later assigned

23   to the ACC, four told State Farm that they did not wish to be transferred to the ACC.  (Dunn

24   Dep. 68:3-71:6.)

25         On October 19, 2007, Plaintiff emailed Dunn and asked to meet with him regarding a

26   matter.  (Dunn Decl. ¶ 14.)  Three days later, on October 22, 2007, Plaintiff returned to work in

27   the ACC.  (Grantz Dep. Vol. 1, 183:19-25; 186:11-25.)  On that date, Plaintiff met with Dunn

28   and other representatives, and told them that he did not want to work in the ACC, but wanted to

1   return to the field instead.  (Grantz Dep. Vol. 1, 186:11-25; 189:21-104:6; 200:16-202:24.)

2   Plaintiff then went home mid-day, and did not return to work the next day.  (Grantz Dep. Vol. 1,

3   185:-9:186:2.)  Instead, on October 23, 2007, Plaintiff went to see Dr. Cohen.  A week later, on

4   October 31, 2007, Plaintiff submitted a letter to Cohen, detailing his history of stress and anxiety

5   and asking him to submit a form to State Farm regarding his desire to return to a field position.

6   (*See* Green Decl. Ex. H; Cohen Dep. 57:1-13, Ex. 33.)  Cohen placed Plaintiff back on paid sick

7   leave for six months, from October 23, 2007, until April 25, 2008, when Plaintiff exhausted his

8   paid sick leave.  (Miller Decl. ¶ 9; Ex. B.)  Two weeks before that leave expired, on April 10,

9   2008, Plaintiff again wrote to Cohen, asking for a letter recommending that Plaintiff not be

10  required to work at the ACC.  (Cohen Dep. Ex. 34-22.)  Four days later, on April 14, 2008,

11  Cohen submitted a letter to State Farm, supporting Plaintiff's request to be reassigned to a field

12  position.  (Cohen Dep. Ex. 34-21.)  The letter stated, among other things, that "[b]eing allowed

13  to return to a less stressful and familiar environment as Mr. Grantz has repeatedly requested

14  would allow him to be a more productive employee with less risk for medical and psychiatric

15  illness." (Dunn Dep. Ex. 5.)  In an addendum, the letter stated that Plaintiff was "cleared to

16  return to work 4/21/2008 on a part time basis."  (Dunn. Dep. Ex. 5.)

17          State Farm declined Plaintiff's request to be reassigned to a field position as supported by

18  Dr. Cohen.  No field positions were open in Irvine, and State Farm did not accept Plaintiff's

19  contention that he was able to work as a field representative but not in the ACC.  (Maxey Dep.

20  73:8-21; 77:22-78:4; Dorlis Dep. 101:24-103:25.)  Plaintiff remained on unpaid leave from April

21  25, 2008, until July 2008.  (Dunn Decl. ¶ 15.)  In July 2008, his leave benefits having expired

22  three months earlier, State Farm terminated Plaintiff's employment for "illness benefits expired."

23  (Dunn Decl. ¶ 16.)

24          Based on these facts and others, Plaintiff has brought seven claims against Defendant

25  State Farm, numbered as follows: (1) failure to accommodate, in violation of California's Fair

26  Employment and Housing Act ("FEHA"); (2) disability discrimination, in violation of the

27  FEHA; (3) retaliation, in violation of the California Family Rights Act ("CFRA"); (4) failure to

28  reinstate to position, in violation of the CFRA; (5) violation of public policy; (6) retaliation, in

1   violation of the federal Family Medical Leave Act ("FMLA"); and (7) failure to reinstate to

2   position, in violation of the FMLA.  Defendant now moves for summary judgment of all seven

3   claims.

4

5   **LEGAL STANDARD**

6

7          Summary judgment is appropriate only where the record, read in the light most favorable

8   to the non-moving party, indicates that "there is no genuine issue as to any material fact and . . .

9   the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also*

10  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Material facts are those necessary to the

11  proof or defense of a claim, and are determined by reference to substantive law. *Anderson v.*

12  *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual issue is genuine "if the evidence is

13  such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  In

14  deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed,

15  and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But the Court need not

16  "assume the truth of legal conclusions merely because they are cast in the form of factual

17  allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

18         The burden initially is on the moving party to demonstrate an absence of a genuine issue

19  of material fact. *Celotex*, 477 U.S. at 323.  If, and only if, the moving party meets its burden,

20  then the non-moving party must produce enough evidence to rebut the moving party's claim and

21  create a genuine issue of material fact. *See id.* at 322-23.  If the non-moving party meets this

22  burden, then the motion will be denied. *Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc.*, 210

23  F.3d 1099, 1103 (9th Cir. 2000).

24

25  **PRELIMINARY MATTERS**

26

27         Both parties have filed numerous evidentiary objections.  In particular, each party objects

28  to, among other things, evidence filed late in the briefing of this Motion.

Defendant's reply brief attached new evidence: the supplemental declaration of Barrett Green, with exhibits; the declaration of Tom Dorlis, with exhibits; and the supplemental declaration of Shelly Miller, with exhibits.  Plaintiff moves the Court to strike this evidence, asserting that it is improper and should have been submitted with the moving papers.  Defendant counters that the evidence was proper, as it was "proffered in reply to issues raised and evidence proffered by Plaintiff in his Opposition."  (Opp'n to Motion to Strike 1:12-13.)  After reviewing the briefing and the proffered evidence, the Court finds that the evidence properly responds to issues raised in Plaintiff's Opposition, and Plaintiff's motion to strike the evidence is DENIED.

Eight days after Defendant's reply brief was filed, Plaintiff requested that the Court consider the declaration of Dr. Matthew Carroll as supplementary evidence.  Plaintiff asserts that Carroll's declaration responds to issues raised in Defendant's reply brief.  But after reviewing the briefing and the proffered evidence, the Court finds that the evidence should have been raised in Plaintiff's opposition brief.  While Plaintiff asserts that Carroll's examination was conducted on April 8, 2009, the day after Plaintiff filed his opposition brief, Plaintiff does not explain why Carroll's examination could not have been conducted earlier.  The Court declines to consider the Carroll declaration.  The Court also finds that the declaration, even if considered, would not have altered the Court's ruling on the Motion.

**ANALYSIS**

**1.      PLAINTIFF'S FIRST CLAIM FOR FAILURE TO ACCOMMODATE**

Plaintiff's first claim asserts that State Farm violated the FEHA by failing to "reasonably accommodate Plaintiff's disabilities, with the result that Plaintiff has been unable to return to work and his employment has been terminated."  (FAC ¶ 18.)  Specifically, Plaintiff asserts that State Farm unlawfully failed to reasonably accommodate him when it: (1) refused to transfer him to a field position after he returned to work in October 2007; and (2) refused to allow him to work from home in June 2007.  In his opposition brief, Plaintiff also argues that State Farm

1   violated the FEHA by failing to engage in the interactive process required by the statute.

2       Under the FEHA, it is an unlawful employment practice for an employer to "fail to make

3   reasonable accommodation for the known physical or mental disability of an applicant or

4   employee."  Cal. Govt. Code § 12940(m).  A "reasonable accommodation" includes "[j]ob

5   restructuring, part-time or modified work schedules, reassignment to a vacant position,

6   acquisition or modification of equipment or devices, adjustment or modifications of

7   examinations, training materials or policies, the provision of qualified readers or interpreters,

8   and other similar accommodations for individuals with disabilities."  Cal. Govt. Code §

9   12926(n)(2).

10      An employer is not required to choose the best accommodation or the specific

11  accommodation that a disabled employee seeks.  *See Hanson v. Lucky Stores, Inc.*, 74 Cal. App.

12  4th 215, 228 (1999).  The FEHA requires only that the accommodation chosen be "reasonable."

13  Cal. Gov't Code §§ 12940(a), (m).  The obligation to reassign an employee who cannot

14  otherwise be accommodated "does not require creating a new job, moving another employee,

15  promoting the disabled employee, or violating another employee's rights under a collective

16  bargaining agreement."  *Hastings v. Dept. of Corrections*, 110 Cal. App. 4th 963, 972 (2003)

17  (internal quotations omitted); *Spitzer v. Good Guys, Inc.*, 80 Cal. App. 4th 1376, 1389 (2000)

18  (internal quotations omitted).  Further, the FEHA does not require an employer to create a new

19  position for an employee, or a temporary light-duty assignment where no such position existed

20  previously.  *See Watkins v. Ameripride Servs.*, 375 F.3d 821, 828-29 (9th Cir. 2004) (employer

21  not required to create new position); *Raine v. City of Burbank*, 135 Cal. App. 4th 1212, 1227

22  (2006) (employer not required to create light-duty assignment that previously did not exist).

23  Finally, an employer is not required under the FEHA to eliminate "essential functions" of a job,

24  or reallocate them to other employees.  *See Stoll v. The Hartford*, 2006 U.S. Dist. LEXIS 81781,

25  *27 (S.D. Cal. Nov. 7, 2006); *Parish v. Consolidated Eng'g Lab*, 1997 U.S. Dist. LEXIS 15879,

26  *30-31 (N.D. Cal. Oct. 6, 1997); *Wilmarth v. City of Santa Rosa*, 945 F. Supp. 1271, 1278 (N.D.

27  Cal. 1996).

28      To prevail in defending a reasonable accommodation claim, an employer must prove that:

1    "(1) reasonable accommodation was offered and refused; (2) there simply was no vacant position

2    within the employer's organization for which the disabled employee was qualified and which the

3    disabled employee was capable of performing with or without an accommodation; or (3) the

4    employer did everything in its power to find a reasonable accommodation, but the informal

5    interactive process broke down because the employee failed to engage in discussions in good

6    faith." *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 263 (2000).

7           Here, Plaintiff first asserts that upon returning from medical leave in October 2007, he

8    made a formal request to State Farm's ADA Committee that his physical and mental disabilities

9    be accommodated by a return to the field office. (Grantz Decl. ¶ 25.) Plaintiff acknowledges

10   that he was only interested in a job in the Irvine Operations Center. (Grantz Dep. Vol. 2,

11   244:11-22.) But according to State Farm, there were simply no open field representative

12   positions in Irvine between Plaintiff's October 2007 request and his July 2008 termination.

13   (Dorlis Dep. 101:24-103:25.) Plaintiff has offered no evidence to the contrary. Again, under the

14   FEHA, an employer is not required to create a new position or move another employee to

15   accommodate the request of a protected employee. Plaintiff's assertion fails.

16          Plaintiff also asserts that State Farm unlawfully failed to accommodate him when it

17   refused to let him work from home in June 2007. But as State Farm points out, Plaintiff has

18   failed to exhaust his administrative remedies as to this claim. *See Martin v. Lockheed Missiles &*

19   *Space Co.*, 29 Cal. App. 4th 1718, 1724 (1994) (as a jurisdictional prerequisite to maintaining a

20   claim under FEHA, a plaintiff must plead and prove that he exhausted administrative remedies

21   by filing a complaint with the California Department of Fair Employment and Housing); Cal.

22   Gov't Code §§ 12960, 12965(b). Plaintiff's complaints filed with the Department of Fair

23   Employment and Housing fail to mention the June 2007 request to work from home. Instead,

24   the complaints focus on Plaintiff's requests, beginning in October 2007, to be transferred to the

25   field facility. (*See* Supp. Green Decl. Ex. C.) The claim of Plaintiff that State Farm failed to

26   accommodate him when it refused to let him work from home in June 2007 is not "like or

27   reasonably related" to Plaintiff's claim, articulated in his DFEH complaints, that State Farm

28   failed to accommodate him when it refused to let him transfer to a field position. *See Sandhu v.*

1    *Lockheed Missiles & Space Co.*, 26 Cal. App. 4th 846, 858 (allowing plaintiff to pursue a claim

2    based on national origin discrimination when his administrative charge form only alleged race

3    discrimination).  This Court cannot consider Plaintiff's claim regarding his request to work from

4    home.

5           Finally, in his Opposition, Plaintiff appears to add a claim that in refusing to

6    accommodate him, State Farm violated the interactive process guidelines of the FEHA.  "Failure

7    to engage in [the interactive] process is a separate FEHA violation independent from an

8    employer's failure to provide a reasonable disability accommodation, which is also a FEHA

9    violation."  *Wysinger v. Automobile Club of Southern California*, 157 Cal. App. 4th 413, 424

10   (2007).  Here, Plaintiff has not pled a claim for violation of the interactive process guidelines

11   under the FEHA, and the Court will not address this newly-raised claim.

12          The Motion for Summary Judgment is GRANTED as to Plaintiff's first claim for relief.

13

14   **2.      PLAINTIFF'S SECOND CLAIM FOR DISABILITY DISCRIMINATION**

15

16          Plaintiff's second claim asserts that State Farm violated the FEHA by discriminating

17   against him "due to his mental and/or physical disabilities."  (FAC ¶ 23.)  Plaintiff further

18   alleges that his physical and mental disabilities were a "motivating factor" in State Farm's

19   transfer of Plaintiff to the ACC and State Farm's decision to terminate his employment.  (FAC ¶

20   23.)

21          Under the FEHA, it is an unlawful employment practice for an employer to discharge an

22   individual from employment because of a physical disability.  Cal. Gov't Code § 12940(a).

23   Disability discrimination claims under the FEHA are evaluated using a "shifting burden"

24   analysis.  First, the plaintiff must establish a prima facie case of discrimination.  If the plaintiff

25   cannot establish a prima facie case, summary judgment for the employer is warranted.  If the

26   plaintiff does establish a prima facie case, the burden shifts to the employer to articulate a

27   legitimate, non-discriminatory reason for the adverse employment action.  Once the defendant

28   does so, the plaintiff may "attack the employer's proffered reasons as pretexts for

1   discrimination" or "offer any other evidence of discriminatory motive." *Guz v. Bechtel Nat'l,*
2   *Inc.*, 24 Cal. 4th 317, 356 (2000).

3        To establish a prima facie case of disability discrimination under the FEHA, a plaintiff
4   must show that: (1) he suffers from a disability; (2) with or without reasonable accommodation,
5   he could perform the essential functions of the employment position held or desired; (3) he was
6   subjected to an adverse employment action; and (4) the adverse employment action occurred
7   under circumstances raising an inference of discrimination. *Guz*, 24 Cal. 4th at 355; *Jensen*, 85
8   Cal. App. 4th at 254.  A plaintiff's evidentiary burden is "minimal." *Caldwell v. Paramount*
9   *Unified Sch. Dist.*, 41 Cal. App. 4th 189, 197 (1996).

10       Assuming that Plaintiff has presented a prima facie case of disability discrimination, the
11  Court finds that State Farm has successfully articulated legitimate, non-discriminatory reasons
12  for Plaintiff's transfer and eventual termination.  According to State Farm, Plaintiff was
13  transferred because the company needed to increase staffing at the ACC, and Plaintiff was, to
14  State Farm's knowledge, the only field representative in Irvine with experience at the ACC.
15  (*See* Riggs Decl. ¶ 11.)  State Farm further asserts that Plaintiff was eventually terminated
16  because his allotment of medical leave under California and federal law had expired.  (Dunn
17  Decl. ¶ 16.)  Both reasons are legitimate, non-discriminatory, and entirely legal reasons to
18  transfer or terminate an employee.

19       Because State Farm has articulated legitimate, non-discriminatory reasons for Plaintiff's
20  transfer and termination, the burden falls to Plaintiff to "attack the employer's proffered reasons
21  as pretexts for discrimination" or "offer any other evidence of discriminatory motive." *Guz*, 24
22  Cal. 4th at 356.  To establish pretext, an employee must "demonstrate such weaknesses,
23  implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered
24  legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy
25  of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory
26  reasons." *Hersant v. Dept. of Soc. Servs.*, 57 Cal. App. 4th 997, 1005 (1997) (internal quotations
27  omitted).  Plaintiff fails to demonstrate such weaknesses in State Farm's legitimate reasons for
28  his transfer and termination.  His claim for disability discrimination fails.

1    The Motion for Summary Judgment is GRANTED as to Plaintiff's second claim for

2    disability discrimination.

3

4    **3.    PLAINTIFF'S THIRD AND SIXTH CLAIMS FOR RETALIATION**

5

6    Plaintiff's third and sixth claims assert that State Farm violated the CFRA and the FMLA

7    by retaliating against him for taking medical leave.  Specifically, Plaintiff alleges that his

8    medical leave was "a motivating factor in State Farm's decision to transfer him to the ACC, and

9    its decision to deny his request for a reasonable accommodation and to terminate his

10   employment."  (FAC ¶¶ 29, 44.)

11   To succeed on his retaliation claim under the CFRA, Plaintiff must establish that: (1)

12   State Farm was an employer covered by the CFRA; (2) Plaintiff was an employee eligible to

13   take CFRA leave; (3) Plaintiff exercised his right to take leave for a qualifying CFRA purpose;

14   and (4) Plaintiff suffered an adverse employment action because he exercised his right to leave

15   under the CFRA.  *See Faust v. Cal. Portland Cement Co.*, 150 Cal. App. 4th 864, 885 (2007)

16   (citing *Dudley v. Dept. of Transportation*, 90 Cal. App. 4th 255, 261 (2001)).  Once an employee

17   establishes a prima facie case, the burden shifts to the employer to offer a legitimate, non-

18   retaliatory reason for the adverse employment action.  *Id.*  If the employer produces a legitimate,

19   non-retaliatory reason, the presumption of retaliation "drops out of the picture," and the burden

20   shifts back to the employee to prove intentional retaliation.  *Id.* (internal quotations omitted).

21   Again, the Court finds that even assuming Plaintiff has established a prima facie case of

22   retaliation, State Farm has successfully articulated legitimate, non-discriminatory reasons for

23   Plaintiff's transfer and eventual termination.  Again, State Farm asserts that Plaintiff was

24   transferred because the company needed to increase staffing at the ACC, and Plaintiff was, to

25   State Farm's knowledge, the only field representative in Irvine with experience at the ACC.

26   (*See* Riggs Decl. ¶ 11.)  Again, State Farm further asserts that Plaintiff was eventually

27   terminated because his allotment of medical leave under California and federal law had expired.

28   (Dunn Decl. ¶ 16.)  Both reasons are legitimate, non-discriminatory, and entirely legal reasons to

1  transfer or terminate an employee.  Again, Plaintiff fails to provide sufficient evidence to

2  establish that State Farm's reasons are pretextual, and his retaliation claim under the CFRA fails.

3        To succeed on his retaliation claim under the FMLA, Plaintiff must establish by direct or

4  circumstantial evidence that his taking of FMLA leave constituted a "negative factor" in the

5  decision to transfer or terminate him.  *Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112,

6  1125 (9th Cir. 2001).  In his opposition brief, Plaintiff contends that the deposition of Anthony

7  Ferrara reveals that Plaintiff was targeted for transfer to the bridge team because his case files

8  had already been re-assigned while he was on medical leave, thus easing the transition process

9  for State Farm.  But Ferrara's testimony reveals only that State Farm management considered

10 Grantz "the best qualified person for the job," and did not wish to "put[] someone else in the

11 bridge team until Mr. Grantz could return," as doing so would necessitate re-assigning that

12 representative's case files for only a brief period.  (*See* Ferrara Dep. 31:6-32:5.)  Plaintiff has not

13 provided any evidence that his taking of FMLA leave constituted an impermissible "negative

14 factor" in the decision to transfer or terminate him.  His claim under the FMLA fails.

15       The Motion for Summary Judgment is GRANTED as to Plaintiff's third and sixth claims

16 for relief.

17

18 **4.      PLAINTIFF'S FOURTH AND SEVENTH CLAIMS FOR FAILURE TO**

19         **REINSTATE**

20

21       Plaintiff's fourth and seventh claims for relief assert that State Farm violated the CFRA

22 and the FMLA by "failing and refusing to reinstate Plaintiff to his position upon the conclusion

23 of his leave and instead transferring Plaintiff to another position that he was unable to safely

24 perform."  (FAC ¶¶ 34, 49.)

25       Under both the CFRA and the FMLA, employees have a right to take a leave of absence

26 of up to 12 weeks for certain purposes, including medical leave.  *See* 29 U.S.C. § 2612.  An

27 employee who take a protected leave under the CFRA or FMLA has the right to be reinstated to

28 an equivalent position upon his return.  29 U.S.C. §§ 2612(a)(1); 2614(a)(1); Cal. Gov't Code §

1    12945.2(a).  Both the CFRA and FMLA place limitations on this right, however, providing that a

2    restored employee has no right to preferential treatment over other employees.  *See* 29 U.S.C. §

3    2614(a)(3) ("Nothing in this section shall be construed to entitle any restored employee to . . .

4    any right, benefit, or position of employment other than any right, benefit, or position to which

5    the employee would have been entitled had the employee not taken the leave."); Cal. Code. Reg.

6    tit. 2 § 7297.2(c)(1) ("An employee has no greater right to reinstatement or to other benefits and

7    conditions of employment than if the employee had been continuously employed during the

8    CFRA leave period.").

9          Here, Plaintiff asserts that State Farm violated his right to reinstatement by refusing to

10   return him to a field position.  But Plaintiff has provided no evidence that he would have been

11   allowed to remain in a field position had he not taken medical leave.  Indeed, State Farm's

12   undisputed evidence shows that all of the claim representatives in Irvine were considered for

13   placement on the Bridge Team, and that a total of eight representatives, including Plaintiff, were

14   selected.  (Riggs Decl. ¶¶ 11, 12.)  State Farm has also submitted evidence that Plaintiff was

15   selected for the Bridge Team for an entirely legitimate reason: of all the field representatives in

16   Irvine, Plaintiff was the only one, to State Farm's knowledge, with experience working in the

17   ACC.  (Riggs Decl. ¶ 11.)  The fact that Plaintiff was on CFRA/FMLA medical leave in the

18   spring of 2007 did not entitle him to a preferential right to avoid assignment to the ACC.

19   Plaintiff's claims for failure to reinstate fail.

20         The Motion for Summary Judgment is GRANTED as to Plaintiff's fourth and seventh

21   claims for relief.

22

23   **5.      PLAINTIFF'S FIFTH CLAIM FOR VIOLATION OF PUBLIC POLICY**

24

25         Plaintiff's fifth claim asserts that State Farm's conduct has violated California's "well-

26   established" and "fundamental" public policies against "discrimination on the basis of a person's

27   mental and/or physical disability" and against "discrimination and/or retaliation against a person

28   for having taken leave for a serious health condition."  (FAC ¶ 39.)  In Sections 2 and 3 of this

1 | Order, the Court found that Plaintiff had failed to provide sufficient evidence of discrimination
2 | or retaliation by State Farm.  Accordingly, Plaintiff's claim for violation of public policy fails.
3 |        The Motion for Summary Judgment is GRANTED as to Plaintiff's fifth claim for
4 | violation of public policy.
5 |
6 | **DISPOSITION**
7 |
8 |        Defendant's Motion for Summary Judgment is GRANTED.  Defendant may submit a
9 | brief, concise proposed judgment to the Court within 14 days of this Order.
10 |
11 | IT IS SO ORDERED.
12 | DATED: September 2, 2009
13 |
14 | _____
15 |                Andrew J. Guilford
                United States District Judge